STATE OF MISSOURI at the Relation of ALBERT BOND LAMBERT, LOUIS NOLTE, JOHN J. NANGLE, JOHN H. GLASSCO, EDWARD R. HANDLAN, JAMES J. MORAN and HARRY J. POWELL, members of and constituting the Board of Trustees of the Police Retirement System of the City of St. Louis, Relators, v. WILLIAM B. FLYNN, Judge of the Circuit Court of the City of St. Louis, Presiding in Division No. 1 thereof.—154 S. W. (2d) 52.

Court en Banc, August 22, 1941.

Rehearing Denied, September 25, 1941.

*Joseph F. Holland, Francis Finley* and *Carl R. O'Connor* for relators.

*M. J. Hart* and *J. P. Griffin* for respondent.

ELLISON, J.—Original proceeding in prohibition. The relators are the members of the Board of Trustees of the Police Retirement Pension System of the City of St. Louis. Respondent is a circuit judge in whose court is pending a suit brought against relators by William Edward Meehan, a former member of the police force of said city, for monthly installments of an accidental disability retirement allowance claimed to be due him under Sec. 9469(5) and (6), R. S. 1939, Sec. 8911, Mo. Stat. Ann., p. 6264. Relators contend respondent has exceeded his jurisdiction in said suit by attempting to quash a hearing before them on the same claim. Respondent filed a return asserting he had acquired jurisdiction of the cause because relators wrongfully failed and refused to entertain Meehan's claim until after the suit thereon had been brought in his court and the issues made up.

Relators have filed a motion for judgment on the pleadings. Therefore all facts well pleaded in relators' petition and not controverted by the return will be accepted as true, State ex rel. Cytron v. Kirkwood, 340 Mo. 185, 189(1), 100 S. W. (2d) 450, 451(1). But averments of the return controverting the petition or alleging new matter, also will be taken as true. [State ex rel. Warde v. McQuillin, 262 Mo. 256, 260, 171 S. W. 72.]

The Police Retirement Pension System was established in cities of 500,000 inhabitants by Laws Mo. 1929, p. 300, and began operation as of October 1, 1929. The system and all its funds are under the management of relators as said board of trustees. The funds are raised by assessed contributions from the members and the city, and from interest on investments. The board of trustees consists of seven persons: the president of the board of police commissioners, ex officio; the city comptroller; two members appointed by the mayor; and three elected by the members of the retirement system. [Sec. 9468, R. S. 1939, Sec. 8910, Mo. Stat. Ann., p. 6261.] The board of police commissioners, just mentioned, whose president is a member ex officio of said board of trustees, is a separate body in charge of the police force, and having four members appointed by the Governor, who serve with the mayor. [Secs. 7689, 7690, R. S. 1939, Secs. 7541, 7542, Mo. Stat. Ann., pp. 5986, 5988.] This fact should be remembered.

With respect to the administration of said retirement pension system, prior to November 1, 1939, Sec. 8910(6), R. S. 1929, Mo. Stat. Ann.,

p. 6262, merely authorized the board of trustees generally to "establish rules and regulations for the administration of funds created by this article and for the transaction of its business." But said subsection (6) was stricken out and a new one substituted by Laws Mo. 1939, p. 619, approved June 12, effective November 1, 1939 (now Sec. 9468(6), supra, Sec. 8910(6), Mo. Stat. Ann., p. 6261, pocket part) giving the board of trustees "exclusive original jurisdiction in all matters relating to or affecting the funds herein provided for, including . . . all claims for annuities, benefits, refunds or pensions under this Act, . . ." The new section also makes the board's determination of any matter reviewable only by certiorari, and allows an appeal from the reviewing court.

Section 9469, R. S. 1939 (3), Sec. 8911, Mo. Stat. Ann., p. 6264, covering the allowance of benefits under the system, provides (italics ours) that *ordinary* disability retirement benefits shall be made (or not) "upon the application of a member in service *or* of the board of police commissioners," etc. But under subsection (5) of said Sec. 9469, *accidental* disability benefits shall be granted (or not) and the officer retired "upon application of a *member of the board of police commissioners.*" Thus it will be seen, a proceeding before relators for accidental disability benefits, unlike one for ordinary benefits, cannot be instituted by the claimant, himself, but must be initiated by a member of the separate board of police commissioners. There is good reason for this last requirement, where the claim is for accidental disability benefits. The board of police commissioners are in direct charge of the police and in a better position to know or find out the facts with respect to the accident and the character of the claimant. ■■■ The circumstance that the president of the board of police commissioners is a member *ex officio* of the board of trustees does not dispense with the requirement that a member of the former board *initiate* the proceeding, though, of course, we do not mean to say they *determine* it.

The subsection further exacts a proper showing that the claimant has become "totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place through no negligence on his part." Also the Medical Board must certify "that such member is mentally or physically incapacitated for further performance of duty, that such incapacity is likely to be permanent, and that such member should be retired." The reason for this requirement is doubtless akin to that stated in the last paragraph.

Meehan joined the force in February, 1930. He claimed to have been permanently and totally incapacitated for duty as the natural and proximate result of an accident while in the actual performance of duty in April, 1931. Thereafter he was dropped or dismissed from the police force in October, 1931. The following month he filed a

verified written application with relators for return of the amount of contributions and accrued interest thereon, standing to his credit in the annuity savings fund; and in consideration thereof waived all right, title and interest in said fund as well as any and all other funds in the charge of said board of trustees. We understand this step was taken under authority of Sec. 9469, supra, subsection (10). Said accumulations were returned to Meehan as requested.

So far as the record shows, nothing else occurred for six years, until November, 1937, when Meehan was committed to the City Sanitarium on account of his mental and physical condition. It appears he was or had become *non compos mentis*. In April, 1938, Michael Hart, attorney of record for Meehan in this and the other proceedings mentioned herein, wrote a letter to relators making application in his behalf for a pension under the retirement system. Shortly thereafter relators advised Mr. Hart they could not entertain the claim. In March, 1939, Meehan through his guardian filed in the circuit court the suit here involved. In December he filed an amended petition. After unsuccessful demurrer, relators filed a general denial in July, 1940, which has never been withdrawn.

While the above proceedings were transpiring in the circuit court, in May, 1940, the board of police commissioners referred Meehan's claim to relators, as said board of trustees. Relators determined to hear the claim and in September set it for hearing on October 8, of which they gave written notice. Four days before that date, on October 4, Meehan's counsel filed in the circuit court suit a motion to quash said intended hearing by relators. The pleaded theory of the motion was that relators had no jurisdiction to pass on the claim because they had theretofore refused to do so until after the suit was filed in the circuit court and the case was at issue. Respondent sustained said motion on October 22, and ordered relators to cease and desist from holding said hearing.

On November 9, 1940, this court en banc delivered an opinion in another case bearing on the same issues, State ex rel. Lambert v. Padberg, 346 Mo. 1082, 145 S. W. (2d) 123. Three days later relators filed in the circuit court written "objections to jurisdiction" in the nature of suggestions, calling attention to said Padberg case, and contending that under the holding thereof, respondent was without jurisdiction to try Meehan's suit because they (relators) could not entertain a claim for the payment of benefits out of the funds entrusted to them until such claim had been submitted by the board of police commissioners and until the medical board had certified the claimant to be incapacitated for further service as required by the statute. The objections went on to say that since Meehan's petition in the circuit court suit failed to plead compliance with said conditions; and since they (relators) had set the claim for hearing before themselves and the claimant had refused to appear, he could not prosecute the same

in the circuit court. The objections were overruled. Thereafter, relators filed their petition for prohibition in this court, based on substantially the same grounds as those urged in said "objections to jurisdiction," with one or two others. After the issues of law were made up, as recited in the beginning, the cause was argued here during the present term.

Briefly, the Padberg case held the 1939 amendment of Sec. 9468(6), supra, (vesting in relators exclusive original jurisdiction over all claims for benefit allowances out of pension funds) did not oust the jurisdiction of the circuit court in a case seeking similar relief, if the circuit court had acquired jurisdiction before the new statute went into effect. But the decision further declared that even in the latter instance, the claimant must have had a valid claim when he filed his suit in court; that its validity would depend on whether there had been a compliance with all statutory conditions; that the claimant must have exhausted his administrative remedies under the statute; and that he should *allege* and prove such facts in the court action. The case ruled the claimant there had neither shown, nor pleaded in the circuit court, facts entitling him to maintain his court action, because: it appeared he had not submitted his claim to the board of trustees before he filed his petition; and the petition did not allege any member of the board of police commissioners had sponsored his claim, or that the board of trustees had considered it, or that the medical board had certified to his incapacity.

 Under the first part of the holding in the Padberg case we must rule the respondent here had jurisdiction of Meehan's case, so far as the mere time of filing is considered, because it was instituted on March 17, 1939, before the effective date (indeed before the approval) of amended Sec. 9468(6), supra. But did his petition state a good cause of action and did the facts make a case?

 First as to the facts. It is alleged in respondent's return (which we must credit) that both the board of police commissioners, and relators as said board of trustees, had in fact refused to hear or consider Meehan's claim before he filed his court action. The return further avers the ground of relators' refusal was that they could not consider any claim for accidental disability until application therefor had been made by the board of police commissioners; that Meehan's letter, per attorney, to relators requesting such a hearing had been referred to the board of police commissioners, and that the latter board had by letter declined jurisdiction because Meehan was "not now" a member of the police force. These facts are undisputed, and if the case stood on them alone, there would be some ground for contending Meehan should be excused for his failure to have his application sponsored by a member of the board of police commissioners.

But the *pleading* of those facts in such manner as to give the circuit

court jurisdiction, is another matter. Respondent's return charges Meehan's original petition in substance alleged relators were the trustees of "the police retirement system;" that he had made application to the relators for a pension, as provided by law (a mere legal conclusion) and "that they refused to hear his claim, as follows:" Then the return quotes from the petition, which is also set out as an exhibit to relators' petition for prohibition. The part quoted alleged that (italics ours): "he has been unable to have the *police retirement system* consider his case;" and that defendants (relators) as the board of trustees of said system, "have informed his attorney that they have no jurisdiction insofar as plaintiff is concerned because he is not now a member of the" police force. There is no allegation in any way connecting the board of police commissioners with the refusal.

However, as stated, Meehan filed an amended petition. It superceded the original, which was abandoned. Conceding arguendo, that it could cure the jurisdictional deficiencies of the original petition, what did it say? The amended petition is included in the record as an exhibit to relators' petition for prohibition. Respondent's return alleges, and the petition itself shows, that the allegation there with respect to the refusal of his claim by relators was condensed to the following: "Plaintiff further states that he made application for said pension and that the defendants (relators) refused to hear and consider his claim." It does not say when he made the application, or why it was refused, or that the board of police commissioners had ever been approached about it and acted or refused to act. In addition to that both petitions wholly ignored the statutory requirement that the medical board certify the claimant as totally and permanently incapacitated. This was important in this case, in view of the fact that Meehan made no claim until six years after the accident and based his disability on insanity ranging from the time of his injury. So we conclude the facts were not well pleaded, and did not state a cause of action over which respondent could exercise jurisdiction.

If the members of either the board of trustees, the board of police commissioners or the medical board had wrongfully refused to perform a statutory duty, the claimant would have a remedy. But the police retirement pension system is entirely statutory, and the statutes provide an administrative tribunal and certain prerequisites to action by it. The courts are not authorized to intrude, as the Padberg case rules, unless and until the statutory conditions have been complied with and administrative remedies have been exhausted. The same general rule has been applied in situations somewhat analogous. [Brinkerhoff-Faris Trust & Savings Co. v. Hill, 323 Mo. 180, 189, 194, 19 S. W. (2d) 746, 751; State ex rel. Bluford v. Canada (Div. 1), 348 Mo. 298, 153 S. W. (2d) 12; Federal Power Commission v. Metropolitan Edison Co., 304 U. S. 375, 387, 82 L. Ed. 1408, 1415.]

Another fact alleged in relators' petition for prohibition in this

court is that Meehan was dropped or dismissed from the police force in October, 1931, about six months after his alleged accident, and that the next month on his written application he withdrew his accumulated contributions from the police retirement fund. If this be true, under Sec. 9469(10) supra, he forfeited his status as a member of the retirement system and was not entitled to an annuity and pension under subsections 6(a) and (b) of said Sec. 9469. But respondent's return controverts this, alleging he *was* a member of the system; that he was *wrongfully* discharged from the police force; and that he was insane continuously from the time of his accident, which facts we must accept as true. This issue was not raised in the pleadings in the circuit court. For these reasons we do not take the foregoing allegation of relators' petition for prohibition into account in ruling the case.

█ Respondent, through counsel, contends the relators waived any question of jurisdiction by appearing in the circuit court and filing answer. This is on the theory that the circuit court had jurisdiction of the subject matter, and that the question was as to jurisdiction over the person. Such is not the fact. It is said that the jurisdiction of a court to adjudicate a controversy rests on three essentials: (1) jurisdiction of the subject matter; (2) jurisdiction of the *res* or the parties; (3) and jurisdiction to render the particular judgment in the particular case. [Charles v. White, 214 Mo. 187, 206, 208, 112 S. W. 545, 549, 127 Am. St. Rep. 674, 21 L. R. A. (N. S.) 481.] The first two are the grand subdivisions of jurisdiction. Jurisdiction of the subject matter is derived from the law and cannot be conferred by consent. Jurisdiction over the person may be waived because it is a personal privilege.

But the third essential—jurisdiction to render the particular judgment in the particular case (sometimes called "competency")—partakes of the character of one or the other of the first two. Where the lacking element of jurisdiction goes to the personal privilege of the litigant, it may be waived. But when it depends on the *power* of the court under a public policy established by statute or otherwise, it cannot be waived.* It is said in 21 C. J. S., sec. 85, pp. 128-9: "If the court cannot try the question except under particular conditions or when approached in a particular way, the law withholds jurisdiction unless such conditions exist or unless the court is approached in the manner provided, and consent will not avail to change the provision of the law in this regard." In the instant case respondent's court had no power to try the case *until* statutory conditions had been

---

*14 Am. Jur., sec. 184, p. 380; 15 C. J., secs. 101, 102, pp. 802-807; Hadley v. Bernero, 103 Mo. App. 549, 554, 78 S. W. 64, 65; State ex rel. McCutchan v. Cooley. 321 Mo. 786, 793, 12 S. W. (2d) 466, 468; Robinson v. Field, 342 Mo. 778, 796, 117 S. W. (2d) 308, 318; United Cemeteries Co. v. Strother, 342 Mo. 1155, 1161, 119 S. W. (2d) 762, 765; Hawkins v. Hughes, 87 N. C. 115, 118; Bayron v. Garcia, 17 Porto Rico, 512, 519.

complied with and administrative remedies had been exhausted, and also unless these facts were shown by the petition upon which respondent's jurisdiction was invoked. It partook of jurisdiction of the subject matter and could not be waived by mere appearance of the relators.

For the reasons stated our provisional rule heretofore issued is made absolute. All concur.